(No. 5241—

TOWER COMMUNICATIONS COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 28, 1968.*

A. H. BARON AND FRED LANE, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; ARTHUR L. BERMAN, Special Assistant Attorney General, for Respondent.

DOVE, J.

This cause of action arises out of a contract, dated March 16, 1961, between Tower Communication Company and the State of Illinois for the construction of eighteen radio towers at a cost of $99,987.00. Fourteen of the eighteen towers were of such a height as to require warn-

ing lights on the top to meet FCC and CAA requirements. In addition to the warning lights, the contract provided that these fourteen towers be equipped with a photo-electric device, which would automatically turn the warning lights on at night and off in the morning.

The dispute in this case centers around the act of the respondent in withholding the sum of $4,890.98 from the contract price for electricity paid for by respondent to operate the warning lights on the fourteen towers during the construction period, October, 1961 to September, 1963. It is claimant's contention that it was not obligated under the contract to provide the electricity to operate the warning lights during the period in question.

Federal regulations require that, when a tower of the type being constructed pursuant to this contract exceeds a height of one hundred forty-nine feet, it must be equipped with warning lights for the protection of airplanes flying overhead. As the towers in question were erected, proper warning lights were installed, and respondent made arrangements with local utility companies to supply electrical power to operate the warning lights.

The contract provided that all work be completed within one hundred days from the date of the contract. It was not, however, until June, 1962, that work on the towers had progressed to the point where the photo-electric control units could be installed on a permanent basis. At this point the engineer for respondent insisted that the photo-electric device be modified so that the photo-electric cell could be mounted approximately twelve to fifteen feet above the device's control panel. Claimant immediately advised respondent that the photo-electric unit called for by the contract specifications could

not be modified in this manner. Claimant then requested a change order from respondent authorizing claimant to purchase a more expensive photo-electric unit, which could be installed as requested. Though claimant repeated its request for a change order several times, it was not until September 10, 1963 that respondent agreed and authorized claimant to purchase the more expensive unit.

Pertinent provisions of the contract in question relating to the duties and obligations of the parties are as follows:

"1. General Conditions of the Contract.

"ARTICLE 2:
Execution, Correlation and Intent of Documents:
It is not intended, however, that materials or work not covered by, or properly inferable from, any heading, branch, class or trade of the specifications shall be supplied, unless distinctly so noted on the drawings. Materials or work described in words which so applied have a well known technical or trade meaning shall be held to refer to such recognized standards.

"ARTICLE 11:
Material, Appliances, Employees:
Unless otherwise stipulated, the contractor shall provide and pay for all materials, labor, water, tools, equipment, light and power necessary for the execution of the work.

"ARTICLE 43:
Protection:
The contractor shall provide and erect all necessary barricades and other protection required by Owner and/or by local laws and ordinances, or local authorities having jurisdiction over same, and shall also protect all walks, curbs, lamp posts, underground conduits, overhead wires, water, sewer, gas mains, etc., until such time as they are taken care of by the respective public service corporations or by the Owner. He shall also provide and maintain all necessary warning lights from twilight to sunrise.

"ARTICLE 47:
Electrical Energy and Lighting:
The general contractor shall make the necessary application, pay for fees and charges, take out all permits and provide and maintain electrical energy from sources other than the building for power and

light for all electricity using devices on machinery or lights required for carrying on the work.

Whenever electric light for illumination purposes is found necessary in the progress of the work, this contractor shall provide such lights as may be required to properly execute the work.

"II SUPPLEMENTARY SPECIFICATIONS:
Protection:
1005. This contractor, as a part of this contract, shall provide and erect all planking, fences, bracing, shoring, sheet piling, lights and warning signs necessary for the protection of adjacent property and the public.

"III EQUIPMENT
Towers:
2046. Obstruction lighting shall be as specified, for each tower, in Section 5000.

"IV GENERAL WORK — TOWERS
Protection:
3007. The contractor, as part of this contract, shall provide and erect all planking, fences, bracing, shoring, sheet piling, lights and warning signs necessary for the protection of adjacent property and the public.

"V. HIGHWAY RADIO ELECTRICAL WORK
Tower Lighting:
5266. All towers are to be lighted as designated by the latest requirements of the FCC and CAA."

Claimant's right to recover depends upon the interpretation and construction of the foregoing contract provisions. Article 47 of the specifications requires claimant to "provide and maintain electrical energy . . . . for power and light for all electricity using devices on machinery or lights required for carrying on the work." Article 43 states that the contractor "shall also provide and maintain all necessary warning lights from twilight to sunrise." Section 5266 states that "all towers are to be lighted as designated by the latest requirements of the FCC and the CAA." Section 1005 states that the contractor "shall provide and erect all planking, fences, bracing, shoring, sheet piling, lights and warning signs necessary for the protection of adjacent property and the public."

The purpose of this contract was the construction of eighteen radio towers. The parties to the contract were aware of the fact that, once a tower was constructed to a certain height, electrical energy would have to be supplied to operate the warning lights required by FCC and CAA regulations. Viewing all of the pertinent sections of the contract as a whole, it is the opinion of this Court that the supplying of electrical energy for the operation of the warning lights, which were required by FCC and CAA regulations, was the responsibility of the contractor until the work on the towers was completed.

The evidence in this case indicates that the delay in the final completion of the towers from June, 1962 until September, 1963 was due to the refusal of respondent to authorize claimant to purchase a more expensive photo-electric unit, which could be installed as requested by respondent, while at the same time refusing to allow claimant to install the photo-electric unit called for by the contract specifications. By such action, respondent effectively prevented claimant from completing the towers until September, 1963, when authorization was finally granted claimant to purchase the more expensive photo-electric unit.

It is the opinion of this Court that respondent's actions in connection with the installation of the photo-electric units terminated claimant's responsibility under the contract to provide electrical energy for the warning lights as of June, 1962. The evidence further indicates that $3,977.11 was paid for electrical energy supplied for the warning lights from June, 1962 to September, 1963.

Claimant is hereby awarded the sum of $3,977.11.